IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 09-cv-02126-MSK-MJW

ISELO HOLDINGS, LLC,

       Plaintiff,

v.

WILLIAM COONAN,

       Defendant

_____

**OPINION AND ORDER DENYING MOTION TO DISMISS AND
IMPOSING SANCTIONS**
_____

**THIS MATTER** comes before the Court pursuant to Mr. Coonan's Motion to Dismiss

for Lack of Jurisdiction **(# 17)**, Iselo Holdings, LLC's ("Iselo") response **(# 33)**, and Mr.

Coonan's reply **(# 45)**; and Mr. Coonan's Objections **(# 90)** to the Magistrate Judge's July 16,

2010 Recommendation **(# 88)** that Iselo's Second Motion for Default Judgment **(# 83)** be

granted, and Iselo's response **(# 92)**.[1]

## FACTS

Only the briefest summary of the substantive allegations in the Amended Complaint

**(#27)** is necessary for the issues presented herein. Iselo entered into business arrangements with

_____

[1]Also pending is Mr. Coonan's Motion for Temporary Restraining Order **(# 29)**, which
this Court construed as a Motion to Stay the case pending determination of Mr. Coonan's Motion
to Dismiss. Because the Court resolves the Motion to Dismiss in this Order, the Motion to Stay
is denied as moot.

Automated Research and Marketing ("ARM"), an entity owned by Mr. Coonan.[2] Under the arrangement, ARM would collect funds owed to Iselo by Iselo's customers and remit those funds to Iselo. Eventually, ARM stopped remitting funds it collected. In addition, Iselo advanced funds to Mr. Coonan as an investment in anticipation of a merger between the companies, but that merger never occurred. Iselo asserts a variety of tort claims against Mr. Coonan, as well as a statutory claim for civil theft under Colorado law. In response, Mr. Coonan has asserted a counterclaim (# 39) for breach of the parties' merger agreement.

Mr. Coonan moves (# 17) to dismiss the claims against him for lack of personal and subject-matter jurisdiction. The litigation proceeded while this motion was pending, and on July 16, 2010, the Magistrate Judge issued a Recommendation (# 88), finding that Mr. Coonan had repeatedly failed to participate in discovery or appear at several hearings, and recommended that the Court enter a default judgment against Mr. Coonan, including Iselo's costs and fees, and dismiss Mr. Coonan's counterclaim. Mr. Coonan has since filed timely Objections (# 90) to that Recommendation.

## ANALYSIS

### A. Motion to Dismiss

Because this Court must resolve any disputes as to its jurisdiction before addressing any other matters in this case, the Court examines Mr. Coonan's Motion to Dismiss. In doing so, the

---

[2]ARM was previously named as a party to this action. In January 2010, counsel representing both ARM and Mr. Coonan withdrew (# 59), and although Mr. Coonan could (and did) elect to continue to appear in this action *pro se*, ARM was required to be represented by counsel. When ARM failed to retain new counsel within a reasonable time period, the Court entered (# 78) default against ARM and dismissed ARM's counterclaim. To date, no default judgment has been sought or rendered against ARM.

Court observes that although Mr. Coonan now proceeds *pro se*, the Motion to Dismiss was fully briefed at a time when Mr. Coonan was represented by counsel, and thus, it is not necessary to afford Mr. Coonan the liberal construction of this particular motion as the Court otherwise would with filings by *pro se* litigants.

Mr. Coonan's motion raises several arguments: (i) that the Court lacks subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties are not diverse; (ii) that the Court lacks personal jurisdiction over Mr. Coonan because Mr. Coonan never directed his activities towards Colorado nor purposefully availed himself of the privileges of doing business in Colorado; and (iii) if jurisdiction exists, the Court should nevertheless transfer this matter to New Jersey or Delaware in the interests of convenience.

Turning first to the question of subject-matter jurisdiction, motions under Fed. R. Civ. P. 12(b)(1) motions generally take one of two forms: (i) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (ii) a challenge to the actual facts upon which subject matter jurisdiction is based. *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002), *citing Holt v. United States,* 46 F.3d 1000, 1002-03 (10th Cir.1995). If the attack is a facial one, the Court applies the same standards it would on a Rule 12(b)(6) motion, treating the facts alleged in the complaint as true. *Muscogee (Creek) Nation v. Oklahoma Tax Commn.*, 611 F.3d 1222, 1227 n. 1 (10th Cir. 2010). Where a Rule 12(b)(1) motion challenges the underlying facts of the case, the Court may not presume the truthfulness of the complaint's factual allegations; rather, the Court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts. *Id.; Sizova v. National Institute of Standards and Technology*, 282 F.3d 1320,1324 (10th Cir. 2002). As the party

invoking federal subject-matter jurisdiction, Iselo has the burden of alleging facts sufficient to show that such jurisdiction exists. *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002).

To allege federal subject-matter jurisdiction premised on diversity of citizenship under 28 U.S.C. § 1332, Iselo must allege facts that demonstrate that it and the Defendants are citizens of different states. Both the original and Amended Complaints contain identical allegations identifying the citizenship of the parties. With regard to itself, Iselo alleges that it "is a Delaware limited liability company with its principal place of business in Colorado." Although ARM has been adjudicated to be in default in this case, the Court will address its citizenship as well, noting that the Amended Complaint states that ARM "is a Delaware limited liability company with, upon information and belief, its principal place of business in New Jersey." The Amended Complaint alleges that Mr. Coonan "resides in New Jersey."

All three of these allegations are problematic. Typically, incorporated entities are citizens, for diversity purposes, of both the state in which they were incorporated and the state in which they have their principal place of business. 28 U.S.C. § 1332(c)(1). Were Iselo and ARM traditional corporations, then, the allegations in the Amended Complaint would be insufficient to establish diversity, as both companies were incorporated in, and thus citizens of, Delaware. However, the Amended Complaint alleges that both entities are "limited liability corporations." Although it does not appear that the 10th Circuit has formally addressed the issue, the majority rule in other circuits is that, for purposes of determining citizenship in a diversity case, limited liability corporations are citizens of every state in which its members reside. *Shannon's Rainbow, LLC v. Supernova Media, Inc.*, 683 F.Supp.2d 1261, 1265-67 (D.Ut. 2010); *Birdsong v. Westglen Endoscopy Ctr., LLC*, 176 F.Supp.2d 1245, 1248 (D.Kan. 2001). Thus, the Court

determines the citizenship of Iselo and ARM by looking to the state in which each of their members reside.

The Amended Complaint contains no allegations whatsoever regarding the members of Iselo and ARM, much less their state of residence. (It does allege that Mr. Coonan is an "owner" of ARM and resides in New Jersey, but does not address Mr. Coonan's "membership" – *c.f.* ownership – in ARM, nor does it address the possibility of ARM having additional members.) In this regard, then, the Amended Complaint fails, on its face, to carry Iselo's burden of alleging complete diversity of citizenship. This defect is easily cured, however. Iselo's response to Mr. Coonan's motion includes an affidavit of Thomas Gordon, who asserts that Iselo has three members – himself and his two daughters – each of whom reside in Colorado. Mr. Gordon states that he believes that Mr. Coonan is ARM's sole principal and is unaware of anyone else being a member of ARM. Were these allegations included in the Amended Complaint, Iselo would have made a sufficient showing of diversity of citizenship for purposes of 28 U.S.C. § 1332: Iselo would be considered to be a citizen only of Colorado, and ARM (along with Mr. Coonan) would be considered to be a citizen only of New Jersey. *See Birdsong*, 176 F.Supp.2d at 1248 (state of incorporation of limited liability company irrelevant to citizenship determination)

Similarly, the Amended Complaint alleges only Mr. Coonan's state of "residen[ce]," not his state of citizenship. Such an allegation is "technically deficient" in demonstrating diversity of citizenship. *Oakland Oil Co. v. Knight*, 92 Fed.Appx. 589, 608 (10th Cir. 2003) (unpublished). Allegations of "mere residence may not be equated with citizenship for purposes of establishing diversity." *Id.*, *citing Whitelock v. Leatherman*, 460 F.2d 507, 514 (10th Cir. 1972).

The Court sees little justification to dismissing this action as a result of Iselo's pleading

errors. The facts cited by Mr. Gordon are not disputed by Mr. Coonan, and those facts establish that the parties are indeed diverse and the Court has subject-matter jurisdiction over this action. Moreover, there is nothing in the record to suggest that these same facts were not present at the time this action was commenced. Accordingly, within seven days of this Order, Iselo shall file a Second Amended Complaint, adequately alleging the facts giving rise to diversity of citizenship. Because there is no indication that the facts alleged by Mr. Gordon are the result of recent changes in the parties' situation and he same facts could – and should – have been asserted at the outset of this action, Iselo's Second Amended Complaint shall be deemed, *nunc pro tunc,* to have been filed on September 8, 2009, the date this action was commenced. Barring such a filing by Iselo, this action will be dismissed for lack of subject-matter jurisdiction.

Next, the Court turns to Mr. Coonan's challenge to this Court's personal jurisdiction over him. In reviewing a Motion to Dismiss pursuant to Rule 12(b)(2), the plaintiff bears the burden of establishing that personal jurisdiction exists. *Soma Medical Intern. v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999); *Omi Holdings, Inc. v. Royal Ins. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). Where a court chooses not to conduct an evidentiary hearing, the plaintiff need only make a *prima facie* showing of jurisdiction by showing, through affidavits or otherwise, facts that, if true, would support jurisdiction over the defendant. *Omi Holdings*, 149 F.3d at 1091 *Soma*, 196 F.3d at 1295. The allegations of a complaint must be taken as true unless contradicted by the defendant's affidavits, *Behagen v. Amateur Basketball Ass'n. of U.S.A.*, 744 F.2d 731, 733 (10th Cir.1984), and to the extent that the affidavits contradict allegations in the complaint or opposing affidavits, all disputes must be resolved in the plaintiff's favor and the plaintiff's *prima facie* showing is sufficient. *Id.*

Colorado's long-arm statute provides that a non-resident party subjects itself to the jurisdiction of Colorado courts for claims arising from the party's "(a) transaction of any business within this state; [or] (b) the commission of a tortious act within this state."  C.R.S. § 13-1-124(1)(a) and (b).  The statute codifies the "minimum contacts" test of *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), and extends the courts' jurisdiction to the maximum extent consistent with the Due Process clause of the 14th Amendment.  *Brownlow v. Aman*, 740 F.2d 1476, 1481 (10th Cir. 1984).  Thus, the Court's analysis is limited to the question of whether the exercise of jurisdiction is consistent with the principles of due process.  *OpenLCR.com, Inc. v. Rates Technology, Inc.*, 112 F.Supp.2d 1223, 1227 (D. Colo. 2000); *Wise v. Lindamood*, 89 F.Supp.2d 1187, 1189 (D. Colo. 1999).

For purposes of personal jurisdiction, due process is satisfied when the defendant has sufficient "minimum contacts" with the forum state to suffice such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."  *Int'l. Shoe*, 326 U.S. at 316.  The "minimum contacts" test examines whether the defendant has purposefully directed its activities at residents of the forum state, whether the claims asserted arise out of that purposeful direction of activity, and whether the assertion of jurisdiction under the circumstances is reasonable and fair. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985); *Teierweiler v. Croxton and Trench Holding Co.*, 90 F.3d 1523, 1532-33 (10th Cir. 1996).

Merely entering into a contract with a Colorado resident, without more, does not amount to purposeful activity in the state.  *Burger King*, 471 U.S. at 478 ("If the question is whether an individual's contract with an out-of-state party <u>alone</u> can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it

cannot.") (emphasis in original); *National Business Brokers, Ltd. v. Jim Williamson Productions, Inc.*, 115 F.Supp.2d 1250, 1254 (D. Colo. 2000), *aff'd*, 16 Fed.Appx. 959 (10th Cir. 2001) (unpublished); *Encore Productions, Inc. v. Promise Keepers*, 53 F.Supp.2d 1101, 1117 (D. Colo. 1999). Indeed, representatives of a defendant can even enter into Colorado to discuss details of the agreement, *id., citing Associated Inns & Restaurant Co. v. Development Assocs.,* 516 F.Supp. 1023, 1026 (D. Colo. 1981); *Encore Productions*, 53 F.Supp.2d at 1117-18, or make telephone calls and direct correspondence into the state without necessarily subjecting themselves to personal jurisdiction. *Far W. Capital, Inc. v. Towne,* 46 F.3d 1071, 1077 (10th Cir. 1995); *Encore Productions*, 53 F.Supp.2d at 1117; *F.D.I.C. v. First Interstate Bank of Denver*, 937 F.Supp. 1461, 1468 (D. Colo. 1996).

Here, the Court declines the opportunity to conduct an evidentiary hearing prior to trial, and thus, determines whether personal jurisdiction exists over Mr. Coonan by examining whether the allegations contained in Mr. Gordon's affidavit create a *prima facie* showing of personal jurisdiction (with the understanding that Iselo will have the ultimate burden of actually proving facts giving rise to personal jurisdiction over Mr. Coonan at the time of trial). Mr. Gordon's affidavit asserts that he learned of ARM through Steve Rasmussen, an associate of Mr. Coonan's. Believing that ARM might provide a good investment opportunity for Iselo, Mr. Gordon had a telephone conference with Mr. Coonan and an investment banking firm. Iselo elected not to invest in ARM, and Mr. Coonan made several phone calls to Mr. Gordon in Colorado, requesting that Mr. Gordon change his mind. Mr. Gordon, Mr. Rasmussen, and Mr. Coonan then began discussing – via telephone calls and e-mails into and out of Colorado – alternatives to Iselo investing in ARM. In March 2009, Mr. Gordon and Mr. Coonan reached an

agreement by which Iselo would lease certain business assets from a facility that ARM operated in Oklahoma. For several months, that business arrangement resulted in both ARM and Mr. Coonan receiving information from Colorado about Iselo's clients, and remitting payments obtained from those clients to Iselo's bank accounts in Colorado. Mr. Coonan also made an received phone calls and sent and received e-mails with Iselo concerning business operations, and received funds from Iselo's Colorado bank accounts and plane tickets from Iselo to go on at least one business trip. The parties continued to have ongoing communications taking place partly in Colorado throughout the time period at issue in this case, concerning a possible merger and Iselo issued an advance of significant sums of money to Mr. Coonan from its bank accounts in Colorado.

Based on these allegations, the Court finds that Iselo has made a *prima facie* showing that Mr. Coonan had sufficient contacts with Colorado, both under the "transacting business" standard and the "tortious act" standards, such that the Constitution permits the exercise of personal jurisdiction over Mr. Coonan in Colorado. Mr. Coonan's contacts with Colorado go far beyond cases such as those cited above, in which parties entered intro contracts with Colorado residents for performance to occur elsewhere, or where the parties' telephone and e-mail communications with Colorado were fairly limited. Mr. Gordon's affidavits indicate that Mr. Coonan engaged in numerous and repeated communications with Iselo in Colorado, as part of a business relationship that spanned several months and concerned a variety of contemplated business ventures. More importantly, Mr. Coonan's agreement with Iselo called for Mr. Coonan and AMF to perform significant portions of that agreement in Colorado, such as receiving information from Colorado regarding Iselo's customers and remitting the funds collected to a

bank account in Colorado. These are more than sporadic or attenuated contacts by Mr. Coonan with Colorado; they reflect his purposeful availment of the benefits of doing business with Iselo in Colorado.

In a similar factual scenario, the Colorado Supreme Court recently held that a defendant had sufficient contacts with Colorado to permit the exercise of personal jurisdiction here. In *Foundation for Knowledge in Development v. Interactive Design Consultants, LLC*, 234 P.3d 673, 679-81 (Colo. 2010), the Colorado Supreme Court considered wether personal jurisdiction existed over a business entity that had negotiated and entered into a contract with a Colorado business. The Colorado business solicited the defendant to enter into the agreement, and the parties negotiated and executed the agreement remotely, with each party communicating from their own state, although the record indicated that the parties had "hundreds" of such communication over the life of the business venture. *Id.* at 679. Among other things, the contract called for the defendant to develop certain electronic material in its home state according to criteria supplied by the plaintiff, the plaintiff to send its customers to the defendant for delivery of that material, and for the defendant to collect revenue from the sale of that electronic material and to remit 70% of those revenues to the plaintiff in Colorado. *Id.* at 680. In addition, the defendant would send invoices for expenses to the plaintiff in Colorado. *Id.* Finding these facts sufficient to support the exercise of personal jurisdiction over the defendant, even though the defendant had never physically entered Colorado, the Court explained:

> a contractual relationship alone is insufficient to establish personal
> jurisdiction, [but] here [defendant] had numerous additional
> contacts with Colorado. The agreement required that significant
> work be performed in Colorado by [plaintiff] and outside Colorado
> by [defendant]. [Defendant] communicated extensively with
> [plaintiff's] representatives in Colorado concerning their duties

> under the agreement. Per the agreement, [defendant] was required
> to send various parts of the project to [plaintiff] in Colorado for
> approval and was also required to remit a percentage of e-
> commerce payments to [plaintiff].

*Id.* at 680. Describing the parties' arrangement as "a business relationship with a corporation that was, at all relevant times, headquartered in Colorado," the Court found that "an absence of physical contacts [cannot] defeat personal jurisdiction. *Id., citing Burger King*, 471 U.S. at 476 ("it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines"). The Court concluded that "the contacts here are not random, fortuitous, or attenuated in nature and sufficiently establish that [the defendant] purposefully availed himself of the privilege of conducting business in Colorado." *Id.* at 680-81. The Court also went on to conclude that tort claims arising from alleged negligent misrepresentations made by the defendant regarding its ability to deliver the products promised by the agreement also supported the exercise of jurisdiction on Colorado's "tortious act" long-arm statute. *Id.* at 681.

Given the factual similarities between the business venture at issue in *Foundation for Knowledge* and the dispute here, this Court finds the reasoning and outcome of the Colorado Supreme Court instructive. Here, as there, the defendant did not formally enter into Colorado, but in all other respects, engaged in a lengthy business venture with a Colorado entity, directing numerous communications and revenues into the state. Under the circumstances, Iselo has made a *prima facie* showing that this Court has personal jurisdiction over Mr. Coonan.

Finally, the Court summarily rejects Mr. Coonan's suggestion that a transfer of venue is warranted here. Mr. Coonan has made no showing that the current forum is inconvenient, much less overcome a strong presumption that Iselo's chosen forum is appropriate. *Wise v. Lindamood*,

89 F.Supp.2d 1187, 1190-91 (D. Colo. 1999); *Kanpp v. Romer,* 909 F.Supp. 810, 812 (D. Colo. 1995). Moreover, Mr. Coonan has made little showing with regard to most of the factors that the Court considers in assessing whether a transfer is warranted: the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and all other considerations of a practical nature that make a trial easy, expeditious and economical. *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir.1991), *citing Texas Gulf Sulphur Co. v. Ritter,* 371 F.2d 145, 147 (10th Cir.1967). At best, Mr. Coonan has merely contended that it is financially difficult for him to travel to Colorado to litigate this case (although he has provided little detail beyond stating in an affidavit that he "cannot afford such luxury" as traveling to meetings with Mr. Gordon in Florida and El Salvador). By contrast, it is apparent that many records relating to Iselo's communications with Mr. Coonan and Iselo's damages are located in Colorado. Under these circumstances, based on the limited showing he has made, Mr. Coonan has not carried his burden of showing that a transfer is warranted.

Accordingly, Mr. Coonan's Motion to Dismiss is denied in its entirety.

**B. Recommendation**

The Court then turns to the Magistrate Judge's Recommendation that Mr. Coonan be adjudged in default as a sanction for failing to participate in discovery and comply with Court orders. Mr. Coonan's Objections to this Recommendation were filed in a *pro se* capacity, and

thus, the Court construes them liberally. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972).

However, such liberal construction is intended merely to overlook technical formatting errors

and other defects in Mr. Coonan's use of legal terminology and proper English. *Hall v. Bellmon*,

935 F.2d 1106, 1110 (10th Cir. 1991). *Pro se* status does not relieve Mr. Coonan of the duty to

comply with the various rules and procedures governing litigants and counsel or the

requirements of the substantive law, and in these regards, the Court will treat Mr. Coonan

according to the same standard as counsel licensed to practice law before the bar of this Court.

*See McNeil v. U.S.*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455

(10th Cir. 1994).

Pursuant to Fed. R. Civ. P. 72(b), the Court reviews the objected-to portions of a

Recommendation *de novo*.

The Magistrate Judge made the following factual findings with regard to Mr. Coonan's

conduct in this case:

> 1. In a December 3, 2009 Rule 16(b) conference, in response to a
> contention by Iselo that the Defendants were deficient in their
> discovery obligations, the Magistrate Judge ordered the
> Defendants to fulfill their initial disclosure obligations. The
> Defendants eventually disclosed some information incidentally as
> attachments to their reply in support of the motion to dismiss, but
> to date have not complied with an order to provide a computation
> of their alleged damages.
>
> 2. Iselo made repeated requests of Mr. Coonan to schedule a
> deposition, sending letters to him on December 7, 2009; December
> 21, 2009 (both prior to Mr. Coonan's counsel's withdrawal); and
> January 6, 2010 (after counsel's withdrawal). Mr. Coonan did not
> respond to any of these letters, and Iselo then noticed Mr. Coonan

for a deposition in Florida.[3]

3.  Mr. Coonan failed to file responses to Iselo's interrogatories and requests for production by the January 11, 2010 due date. Iselo moved to compel production of this material. On January 27, 2010, the Magistrate Judge held a telephone status conference to address the issue, and Mr. Coonan failed to appear. The Magistrate Judge eventually deemed the motion confessed and ordered Mr. Coonan to respond to the discovery requests by March 1, 2010.

4.  Having not received any discovery from Mr. Coonan, Iselo wrote to him on February 10, 2010 and rescheduled his deposition to March 9, 2010. Mr. Coonan did not appear for the rescheduled deposition.

5.  As a result of Mr. Coonan's nonappearance on January 27, the Magistrate Judge issued an Order to Show Cause, directing Mr. Coonan to appear at a February 25 telephonic hearing or to risk imposition of sanctions up to and including entry of default and an order of contempt. Mr. Coonan did appear by telephone at the February 25 hearing, and was advised of the Court's order directing him to produce discovery by March 1, 2010. Mr. Coonan did not, at that time, object to the instruction or assert that he lacked any responsive documents. Nevertheless, Mr. Coonan did not produce any discovery on or after March 1.

6.  On March 2, Iselo wrote to Mr. Coonan, inquiring as to his intent to produce the documents as requested by the Court. Mr. Coonan replied that "ARM is closed, the landlord locked me out, and business records were inside . . . This case should and will be dismissed [for lack of jurisdiction] and at this point all I can do is await that eventuality."

7.  Iselo then moved for entry of default against Mr. Coonan. The Magistrate Judge set the matter for a hearing on May 5, 2010, ordering Mr. Coonan to appear in person and advising that failure to appear could result in a default judgment against him. On the eve of that hearing, Mr. Coonan filed a two-page document stating

---

[3]The record reflects that Mr. Coonan sometimes traveled to Florida to meet with Mr. Gordon regarding the business arrangement in this case, although Mr. Coonan contends that Mr. Gordon always paid his travel costs.

that he had no money to travel to the hearing and that he lacked
any access to ARM's records, which were now in possession of his
landlord. As a result, Mr. Coonan did not appear at the May 5
hearing.

8. The Magistrate Judge denied Iselo's request for entry of default
against Mr. Coonan, but again issued an order directing Mr.
Coonan to produce discovery responses by May 28, 2010. Mr.
Coonan did not comply with that Order.

The Court has carefully reviewed Mr. Coonan's Objections to the Recommendation to determine whether he disputes any of the Magistrate Judge's factual findings listed above. Mr. Coonan states only that the reason he did not inform the Magistrate Judge at the February 25 hearing that he had no access to responsive documents was because the Magistrate Judge "didn't give me any opportunity to tell him that the company was closed." Accordingly, with that modification, the Court adopts the Magistrate Judge's factual findings.

The Magistrate Judge concluded that sanctions against Mr. Coonan were warranted under Fed. R. Civ. P. 37(b)(2)(A), as a result of Mr. Coonan's failure to obey the Magistrate Judge's discovery orders. Contemplating entry of default as a sanction, the Magistrate Judge first considered the factors in *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920-21 (10th Cir. 1992). Finding that all five of those factors weighed against Mr. Coonan, the Magistrate Judge recommended that a default judgment enter against Mr. Coonan with regard to Iselo's claims, and that Mr. Coonan's counterclaim against Iselo be dismissed. In addition, the Magistrate Judge recommended that Mr. Coonan be required to pay Iselo's costs and fees occasioned by his failure to participate in discovery, pursuant to Fed. R. Civ. P. 37(b)(2)(c).

Mr. Coonan's objections to the Magistrate Judge's recommendation can be generally grouped into three categories: (i) a complaint that the Court has not yet ruled upon Mr. Coonan's

motion to dismiss, and that such a ruling would vindicate Mr. Coonan's need to supply discovery; (ii) Mr. Coonan lacks access to material needed to make the necessary disclosures and lacks the financial wherewithal to litigate this action in Colorado; and (iii) although he believes that Iselo has all relevant information already, he tenders responses to Iselo's interrogatories with his Objections "in order to stop this denial of my right to get my motions heard" and to "be in compliance."

With regard to Mr. Coonan's first issue, the Court finds that the delay in ruling on his motion to dismiss has no bearing on the issue of whether he failed to participate in discovery and whether entry of default is an appropriate sanction. Although Mr. Coonan had every right to request dismissal of Iselo's claims and a stay of this litigation pending determination of that request, no authority entitles him to ignore his discovery obligations while those requests are pending. According to an unobjected-to finding in the Recommendation, the Magistrate Judge specifically advised Mr. Coonan (through counsel) at the December 3, 2009 Scheduling Conference that discovery would proceed notwithstanding Mr. Coonan's then-pending Motion to Dismiss. Thus, Mr. Coonan cannot profess any confusion as to whether discovery was stayed pending resolution of his motions. By refusing to participate in discovery while his motions were pending, Mr. Coonan essentially sought to grant himself the very stay he was requesting from this Court, even though the Court had not yet seen fit to grant such relief. The Court finds that this line of argument warrants, rather than refutes, the recommendation that sanctions be imposed.

As to Mr. Coonan's arguments regarding his inability to engage in discovery, the Court finds these arguments unavailing. Turning first to Mr. Coonan's professed lack of access to his

records, this argument is unpersuasive for several reasons. First, Mr. Coonan never expressed this fact until March 2,[4] more than 3 months after Mr. Coonan's initial obligation to engage in discovery ripened. In the intervening time, both Iselo and the Court made numerous attempts to prompt Mr. Coonan to respond to Iselo's discovery requests. Rather than demonstrating good faith by diligently responding to those requests, informing Iselo and the Court of his inability to access his records (allowing the Court to devise a plan for how Mr. Coonan and this case could proceed in light of that fact), Mr. Coonan instead chose to simply ignore repeated communications from Iselo and the Court, requiring both Iselo and the Court to needlessly expend additional time and effort seeking to determine Mr. Coonan's position on the issue.

Secondly, assuming Mr. Coonan is indeed unable to obtain the information from his landlord – a somewhat dubious proposition that the Court nevertheless entertains – Mr. Coonan is nevertheless capable of responding to Iselo's discovery requests even with the limited information he has. For example, he acknowledges that he never provided Iselo with an explanation of the damages he claims as part of his counterclaim, but acknowledges in his Objections that existing data makes it possible to partially derive that figure. He states that "the itemization [of damages] can be surmised [from] the term sheets that are already included in evidence and given by the plaintiff himself. . . I lost a salary, incentives, and my whole company due to this plaintiff changing his mind." Thus, although Mr. Coonan could partially "surmise" the measure of his damages from this information, he never attempted to do so in response to

_____

[4]Whether this date or February 25, the date Mr. Coonan contends he wanted to explain the matter to the Magistrate Judge but was precluded from doing so, is used as the first date that Mr. Coonan expressed his inability to obtain the relevant material does not materially alter the analysis.

Iselo's requests or the Magistrate Judge's directives.  This conduct evidences a purposeful attempt to delay or obstruct this litigation, rather than a good faith effort to present the case on whatever limited information remains available to him.

Finally, the Court addresses Mr. Coonan's argument that he lacks the financial ability to pursue this litigation.  Beyond asserting this fact, Mr. Coonan provides no details regarding his financial condition.  But even assuming that the underlying events have rendered him impecunious, much of the conduct cited as sanctionable by the Magistrate Judge has nothing to do with Mr. Coonan's finances.  Even assuming that he is nearly destitute, there is no justification for him simply refusing to respond to numerous letters from Iselo seeking to schedule his deposition or for his failure to respond to Iselo's discovery requests setting forth the information that he had in his possession at the time.  Each of these obligations could be met through correspondence, requiring no significant outlay for travel expenses.  Accordingly, the Court finds Mr. Coonan's objections reagrding his lack of access to information and his financial circumstances unavailing.

The final basis for Mr. Coonan's argument against any sanction is his effort to provide substantive responses to Iselo's discovery requests as an attachment to his Objections.  For many of the reasons stated above, the Court finds no merit in Mr. Coonan's suggestion that this late-breaking effort is indicatI've of good faith.  Mr. Coonan has simply offered no explanation why he did not tender such a response earlier.

For the reasons cited above, as well as those set forth by the Magistrate Judge, the Court agrees that sanctions against Mr. Coonan are appropriate.  It is undisputed that he failed to engage in discovery – both providing responses to written requests and sitting for a deposition –

as properly requested by Iselo and repeatedly ignored orders from the Magistrate Judge to do so. This Court agrees with the Magistrate Judge's findings with regard to the first four *Ehrenhaus* factors – that Mr. Coonan's conduct prejudiced both Iselo and the judicial system, that such obstruction was without legitimate justification on Mr. Coonan's part, and that Mr. Coonan was previously warned of the risk of sanctions for non-compliance.

The Court also agrees with the Magistrate Judge that the final *Ehrenhaus* factor – the efficacy of lesser sanctions – partially warrants the sanctions recommended by the Magistrate Judge, but reaches a different conclusion as to other sanctions. *Ehrenhaus* teaches that the Court should select the least harmful sanction that would nevertheless remedy the prejudice caused by the offending conduct and ensure future compliance. In doing so, the Court attempts to calibrate the sanction to the prejudice found to exist. Here, the Court finds prejudice both to Iselo and the judicial system, and examines how sanctions can remedy each type of prejudice.

First, the prejudice against Iselo caused by Mr. Coonan's conduct has several components. As the Magistrate Judge found, Mr. Coonan's conduct has caused Iselo to incur needless attorney's fees and costs, and has blocked Iselo's ability to complete discovery in a timely manner. The first type of prejudice can be completely ameliorated by an order compelling Mr. Coonan to pay the reasonable costs and fees incurred by Iselo as a result of his conduct.[5] Although Mr. Coonan professes to have limited financial resources available to him,

---

[5]Iselo shall have 14 days within which to file a properly-supported motion for fees. Mr. Coonan shall have 14 days to respond, both as to the reasonableness of the fees requested by Iselo and to make (and support with appropriate evidence) any argument with regard to how such a fee award should be structured in light of Mr. Coonan's ability to pay. Iselo may reply, if necessary, within 7 days of Mr. Coonan's response. The Court will then issue an order directing the amount of fees to be paid by Mr. Coonan and the manner and schedule for payment.

and an order imposing a monetary sanction may simply delay what would eventually be a dismissal premised upon Mr. Coonan's failure to pay the amount imposed, monetary sanctions could serve powerful interests of remediation and deterrence.

The second form of prejudice to Iselo is more problematic. Mr. Coonan's actions have delayed not only Iselo's ability to have its own claims against him adjudicated, but to obtain a ruling on Mr. Coonan's counterclaims against it as well. Thus, a sanction seeking to remedy this prejudice must address both Iselo's claim and Mr. Coonan's counterclaim.

With regard to the counterclaim, it is evident that Mr. Coonan has purposefully refused to attempt to quantify the damages that he claims to have suffered. Even the late discovery responses tendered with his Objections are coy with regard to the amount he claims in damages, stating that "I can't answer . . . I don't know what the breach has caused." Because Mr. Coonan refuses to take a position regarding the amount of damages he claims to have suffered, an appropriate sanction would be to bind him to that position for purposes of trial. Of course, the practical effect of such a sanction would be to prevent him from asserting any specific amount of damages arising out of his counterclaim for breach of contract. This, in turn, would warrant dismissal of that counterclaim as a matter of law, as a party asserting a claim for breach of contract must provide the factfinder with a reasonable basis for calculating actual damages. *City of Westminster v. Centric-Jones Constructors*, 100 P.3d 472, 477 (Colo. App. 2003). Thus, a sanction that binds him to his previously expressed position regarding damages is effectively a sanction of dismissal of that counterclaim, and, while admittedly a harsh remedy, is warranted in these circumstances.

Imposing an appropriate sanction for Mr. Coonan's failure to provide Iselo with

discovery concerning Iselo's claim against him is also problematic. It may be that Mr. Coonan has (or had) evidence that would be probative of Iselo's claims, and by refusing to participate in discovery, Mr. Coonan has prevented Iselo from obtaining that evidence. An appropriate remedy, then, might be to preclude Mr. Coonan from offering any evidence in defense of Iselo's claim that he has not already produced, and to permit the factfinder to draw an adverse inference against Mr. Coonan regarding any fact that could be expected to be shown by evidence in Mr. Coonan's possession that has not already been produced. Once again, this is a sanction short of dismissal that might be sufficient to ameliorate prejudice that Iselo has suffered as a result of Mr. Coonan's conduct. But this sanction also has inevitable consequences: the record reflects that Mr. Coonan has failed to sit for a deposition, despite having been noticed for one, and thus, would be precluded by such a sanction of testifying in his own defense of Iselo's claims. It may be that Mr. Coonan finds himself unable to refute Iselo's claims – say, on summary judgment – under such a sanction, and that the sanction thus becomes the functional equivalent of simply granting a default judgment. But the Court will not presuppose that Iselo can establish all of its claims and all of its alleged items of damages, even with the benefit of such a harsh sanction on Mr. Coonan, and thus, the Court will not impose a sanction of outright default.

Thus, a sanction consisting of: (i) a monetary award of Iselo's reasonable costs and fees against Mr. Coonan; (ii) binding Mr. Coonan to evidence produced to date as to his counterclaim, which effectively results in dismissal of that counterclaim; and (iii) preclusion of Mr. Coonan from offering any evidence at trial not specifically disclosed, coupled with an instruction to the factfinder that it can infer from the absence of evidence likely to be found in Mr. Coonan's possession that the evidence would have been unfavorable to Mr. Coonan, suffices

to ameliorate all the prejudice to Iselo. Thus, the Court turns to what further sanction, if any, is necessary to ameliorate the prejudice to the judicial system.

The Magistrate Judge found that Mr. Coonan's conduct prejudiced the judicial system by delaying the resolution of this case, by being "inherently contumacious," and by hindering the Court's management of its docket. As to the first and last issue, the delay in this case and disruption of the docket that prejudices the Court is the same prejudice that Iselo suffers from delay of the case, and the sanction imposed to remedy Iselo's prejudice also ameliorates that suffered by the judicial system. By essentially deeming the discovery process closed, with any disputes as to the evidence construed in favor of Iselo, the sanction described above essentially concludes the discovery process, allowing this case to be restored to a normal schedule.[6]

It remains necessary to craft a sanction that will punish Mr. Coonan for his contumacious conduct to date and ensure that such behavior does not recur for the remainder of this case. The Court's ability to punish parties who disobey orders is largely limited to monetary sanctions and preclusive sanctions. In light of the severe monetary and preclusive sanctions discussed above, there is little punitive value to be gained by imposing additional sanctions against Mr. Coonan for his contumacious behavior. With entry of default apparently being the only other club remaining in the bag, the Court readily recognizes why the Magistrate Judge may have concluded that no sanction short of default would be effective in remedying this particular prejudice. But perhaps the harsh and far-reaching sanction previously articulated by this Court

---

[6]The only remaining deadline from the Scheduling Order is a dispositive motions deadline that passed in June 2010 without action by Iselo. Because the discovery period can now be said to have closed, the Court will grant Iselo 30 days from today's date to file a dispositive motion with regard to its claims.

has, perversely, a more punitive effect than even an outright default would.  The sanctions discussed above are, likely, a mortal wound to Mr. Coonan's ability to defend against Iselo's claims, but not the undisputed killing blow that default would be.  As a result, Mr. Coonan must soldier on, mindful of the likelihood that his continued efforts in this case could be in vain.  (Of course, the Court does not discount the palliative effect that settlement might have on Mr. Coonan's wounds.)  This constant cognition of being at a severe disadvantage for the remainder of this case might suffice to punish Mr. Coonan for his prior behavior in nearly the same way – if not moreso – as the sanction of default.

That leaves only the need to craft a sanction that will ensure Mr. Coonan's future observance of all orders and deadlines set by the Court.  This is readily satisfied by an advisement to Mr. Coonan that any disregard by him of <u>any</u> deadline, order, or instruction by the Court will result in entry of default against him.  Simply put, his prior acts have absorbed all of the slack that the Court is willing to grant him, leaving him no additional margin for error or mistake.  Having spared Mr. Coonan from the ultimate sanction, the Court advises him that any future transgression will be his last.

## <u>CONCLUSION</u>

For the foregoing reasons, Mr. Coonan's Motion to Dismiss for Lack of Jurisdiction **(#17)** is **DENIED** in its entirety, subject to Iselo timely filing a Second Amended Complaint as set forth herein. Mr. Coonan's Objections **(# 90)** are **OVERRULED**, and the Court **ADOPTS IN PART** the Magistrate Judge's July 16, 2010 Recommendation **(# 88)**.  Iselo's Second Motion for Default Judgment **(# 83)** is **DENIED** in lieu of the following sanctions imposed on Mr. Coonan: (i) payment of Iselo's costs and attorney's fees incurred in addressing Mr. Coonan's

violation of discovery rules and orders, with the amount of such fee and circumstances of payment to be determined according to the procedure set forth herein; (ii) Mr. Coonan's counterclaim **(# 39)** is **DISMISSED** with prejudice; (iii) Mr. Coonan is precluded from offering any evidence at trial that has not been previously disclosed and supplied to Iselo, and to the extent Iselo can demonstrate that certain evidence would be expected to be in Mr. Coonan's possession and was not disclosed, the factfinder may infer that such evidence would have been unfavorable to Mr. Coonan; and (iv) Mr. Coonan is advised that any future failure to comply with an order of the court, obligation under the Federal or Local Rules of Civil Procedure, or other duty imposed upon him shall result in the entry of default against him as a sanction. Mr. Coonan's Motion for Temporary Restraining Order **(# 29)**, which the Court has construed as a Motion to Stay pending determination of Mr. Coonan's Motion to Dismiss is **DENIED** as moot.

Dated this 10th day of September, 2010

BY THE COURT:

_____

Marcia S. Krieger
United States District Judge